

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

CRAIG T. GOLDBLATT
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3832

July 11, 2023

**VIA CM/ECF**

    Re:   *In re Promise Healthcare Group, LLC*, et al., No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335

Dear Counsel:

    The debtors[1] in these cases filed for chapter 11 bankruptcy protection on November 5, 2018.[2] During the bankruptcy case, the debtors sold one of their medical facilities, the Silver Lake Medical Center, to the defendant,[3] with whom the debtors had engaged in pre-bankruptcy negotiations over a potential sale. After the petition date, the debtors held an auction for the facility and ultimately designated LADMC as the successful bidder. The parties then entered into an asset purchase agreement, which the Court approved on February 13, 2019.[4] On September 17, 2020, the Court entered an order confirming the debtors' liquidating plan.[5] The plaintiff in this action, the liquidating trustee appointed to administer the trust created by the plan, initiated the above-captioned adversary proceeding arguing that LADMC improperly withheld certain payments allegedly owed to the trust on account of the sale of the Silver Lake facility. The complaint asserts four counts: (I) for a determination of default, (II) for declaratory judgment that the defendant improperly withheld payment, (III) for breach of contract, and (IV) for breach of the implied covenant of good faith.[6] Defendant moves to dismiss Counts II and IV on the theories that Count

---

[1] Promise Healthcare Group, LLC and its affiliated debtors are herein referred to as the "debtors," or the "seller."

[2] D.I. 1 ¶ 17.

[3] Defendant L.A. Downtown Medical Center is herein referred to as "LADMC" or the "buyer."

[4] D.I. 1 ¶ 44.

[5] *Id.* ¶ 18.

[6] *See* D.I. 1.

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 2 of 9

II is duplicative of Count III, and Count IV fails to allege that there are any missing terms in the contracts that may be filled in by the implied covenant. For the reasons set out below, the Court will deny the motion to dismiss without prejudice.

## Factual and Procedural Background

The debtors operated various hospital facilities and, prior to the petition date, were in the process of negotiating the sale of the Silver Lake facility to the defendant.[7] In January 2019, following an auction in bankruptcy, the debtors designated defendant LADMC as the successful bidder for the facility.[8] In February 2019, the Court entered an order approving the sale of the facility to the buyer.[9] That same day, the parties entered into a Second Amended APA.[10] As part of the sale, the buyer agreed to pay a portion of the purchase price over time. That agreement was reflected in a promissory note under which the buyer would make nine semi-annual installment payments of $900,000 plus interest.[11] The parties executed the note in March 2019. The sale of the Silver Lake facility closed immediately thereafter.[12]

In September 2020, the Court entered an order confirming the debtors' second amended plan of liquidation.[13] The debtors' plan created a liquidating trust tasked with (among other things) administering the trust's assets for the benefit of creditors.[14] Those assets, the complaint alleges, included the debtors' rights and interests under the APA and promissory note.[15] The plan also authorizes the trustee, as successor-in-interest to the debtors, to "investigate, institute, prosecute, abandon, settle or compromise any Causes of Action … held by the Debtors and the Estates."[16] In that capacity, the trustee initiated this adversary proceeding in April 2023. The trustee alleges that the buyer deducted certain amounts from what it otherwise owed

---

[7] *Id.* ¶ 21. In considering the motion to dismiss, this Court accepts the factual allegations as set forth in the complaint as true. *Bohus v. Restaurant.com Inc.*, 784 F.3d 918, 921 n.1 (3d Cir. 2015).

[8] D.I. 1 ¶ 25.

[9] *Id.* ¶ 44. The Asset Purchase Agreement executed between the parties and approved by the Court is herein referred to as the "APA."

[10] D.I. 1, Exh. B.

[11] D.I. 1 ¶ 6. The Promissory Note is herein referred to as the "note."

[12] *Id.* ¶ 45.

[13] *Id.* ¶ 18.

[14] *Id.*

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 18.

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 3 of 9

the trust under the promissory note. The crux of the dispute is whether, under the terms of the parties' agreement, the buyer was entitled to do so. Two categories of setoffs are disputed.

*First*, under the APA, certain liabilities, defined as the "Excluded Liabilities," would remain the financial responsibility of the seller, not the buyer. To the extent the buyer incurred damages or losses on account of these "Excluded Liabilities," the promissory note authorizes the buyer to deduct them from the semi-annual payments it otherwise owed.[17] The agreement contained a provision for addressing disputes over the propriety of an offset claimed under this category. The contested escrow provision requires, upon the seller's written objection to any asserted setoff, that the buyer place the contested amounts into escrow within a certain period of time.[18] The parties are then required to seek to reconcile the setoff amounts to determine whether they relate to Excluded Liabilities. The funds are to remain in escrow until the parties submit a joint written notice that the matter has been resolved or deliver to the escrow agent a final order or judgment resolving the dispute. The complaint alleges that the buyer failed to place $978,067.51 into escrow within the time required by the agreement, though the complaint acknowledges that the buyer has by now placed all but $187,032 of the allegedly required amount into escrow.[19]

*Second*, the state of California charges hospitals certain amounts (known as Hospital Quality Assurance Fees and referred to by the parties as "QAFs") that relate to California's participation in the federal Medicaid program. The state assesses these fees on a backwards-looking basis based on services the hospital provided over specific time periods. In the APA, the parties agreed that the seller would bear responsibility for fees that relate to services rendered before the closing, but that the buyer would bear responsibility for fees relating to services provided thereafter.[20] In order to credit the buyer for the former, the buyer would be allowed to offset the payment of those fees from the balance otherwise owed under the note.[21] Thus, § 3.7 of the Second Amended APA requires the buyer to pay all QAF fees in the first instance, including those for which the seller would ultimately be responsible, but § 13.4(d) of the APA allows the buyer, in effect, to repay itself for amounts that were

---

[17] *Id.*, Exh. C § 3(a)(ii) (Promissory Note).

[18] Note § 3(b).

[19] D.I. 1 ¶ 113.

[20] *Id.* ¶ 28.

[21] *Id.* ¶ 31.

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 4 of 9

the seller's responsibility by deducting those payments from its semi-annual payments on the note.

The question now is whether the parties altered this mechanism when they entered into the Second Amended APA. That agreement amended the APA's definition of "Purchase Price" to include a $5,585,037 price deduction.[22] The seller maintains that this discount represents the parties' good faith estimate of the buyer's expected QAF program fees.[23] Its view is that this amendment sought to simplify and resolve all these setoff issues by essentially eliminating the buyer's rights to assert QAF setoffs on account of fees incurred by the seller. Instead, while the buyer is still obligated to pay those fees, the buyer would be credited for those payments with the purchase price deduction, thereby forfeiting the right to seek a further deduction under § 13.4.

The buyer takes a different view. As stated in its motion to dismiss, the buyer asserts that "the APA and the Note both contain terms allowing LADMC to take offsets and thereby reduce the amount due under the Note," including for payments made on account of the QAF program.[24] The buyer points to § 13.4 of the APA, claiming that this reflects the parties' understanding that "LADMC could [take a deduction from the semi-annual payments] for any excluded liability invoiced to LADMC, including any [QAF] fees."[25] To date, the buyer has asserted offsets totaling $3,016,456 in QAF deductions.[26] This action was brought on account of these allegedly improper setoffs.

Defendant has moved to dismiss Count II as wholly duplicative of Count III. Count II asks for a declaratory judgment that *all* of LADMC's offsets are improper and due immediately, including both the Excluded Liabilities and the QAF offsets.[27] Count III, by contrast, only asks the Court to determine whether the buyer breached the APA and the note by asserting additional QAF offsets.

Defendant also moves to dismiss Count IV, which seeks a ruling from the Court that the buyer violated the implied covenant of good faith and fair dealing by engaging "in a pattern of stall tactics, delaying and shorting payments owed to the

---

[22] APA § 3.1

[23] D.I. 1 ¶ 36.

[24] D.I. 13 at 6.

[25] *Id.* at 5.

[26] D.I. 1 ¶¶ 133, 136.

[27] D.I. 1 ¶ 141.

Case 23-50335-CTG   Doc 34   Filed 07/11/23   Page 5 of 9

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 5 of 9

Trust."[28]  These tactics, plaintiff alleges, include buyer's attempts to assert offsets for QAF liabilities, despite "the Parties explicitly incorporating the [QAF] fees into the reduced Purchase Price."[29]  In its motion to dismiss, the defendant argues that the implied covenant of good faith and fair dealing is unavailable if the contract speaks directly to the issue at hand.  Defendant maintains that the issue in this case – whether the defendant acted appropriately when it asserted additional QAF offsets – is expressly governed by the APA and the note, leaving no work left for an implied covenant.

## Jurisdiction

The plaintiff asserts that this Court has jurisdiction over this matter under 28 U.S.C.§ 1334(b)'s grant of "related to" jurisdiction.[30]  It is not obvious to the Court that this assertion can be squared with the Third Circuit's decision in *Resorts International*, which holds that the "related to" jurisdiction narrows, on a post-confirmation basis, to matters with a "close nexus" to the confirmed plan.[31]  It is far from clear that this lawsuit is sufficiently connected to the terms of the plan to satisfy that test.  The Court is nevertheless satisfied that it has subject-matter jurisdiction over this action.  The basis for that jurisdiction is the Court's authority to enforce its prior sale order, which falls within the "arising in" jurisdiction.  While a case can be made that an order approving a sale *ought* do no more than authorize the debtor to sell estate property, the sale order here – which is of course by now a final and non-appealable order – can fairly be read to direct the parties to comply with their obligations under the APA.[32]  To the extent a breach of the APA may be treated as a violation of the order, this Court has subject-matter jurisdiction to enforce that order.

## Analysis

Defendant moves to dismiss Counts II and IV, arguing that both counts fail to state a claim under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this adversary proceeding by Bankruptcy Rule 7012.  A complaint will survive a

---

[28] D.I. 1 ¶ 158.

[29] *Id.* ¶ 161.

[30] *Id.* ¶ 11.

[31] *In re Resorts Int'l*, 372 F.3d 154, 166-167 (3d Cir. 2004).

[32] Main Case D.I. 740 at 28 ("All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with … the ability of the Silver Lake Debtors to sell and transfer the Purchased Assets to the Successful Bidder … or … Successful Bidder's acquisition, use and enjoyment of the Purchased Assets … in accordance with the terms of the APA and this Order."); *Id.* at 25-26 ("This Order shall be binding in all respects upon the Debtors, their estates … the Successful Bidder, all successors and assigns of the Successful Bidder …").

Case 23-50335-CTG    Doc 34    Filed 07/11/23    Page 6 of 9

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 6 of 9

motion to dismiss so long as it "states a legally sufficient claim based on the plain statement of facts alleged."[33]  When considering a motion to dismiss, the Court must take all facts as true and draw all reasonable inferences from well-pleaded facts in favor of the non-moving party.[34]  Taken together, those facts must sufficiently assert a plausible claim.[35]  Plausibility is assessed in accordance with a three-part process set forth by the Third Circuit in *Burtch v. Milberg Factors, Inc.*[36]  That process asks courts to (1) isolate the elements of the claims that are alleged, (2) remove all legal conclusions from the complaint, and (3) determine whether the remaining factual allegations "plausibly give rise to an entitlement for relief."[37]

## I.    The Court will not dismiss Count II at this stage.

Count II seeks a declaratory judgment that all of the offsets asserted by the defendant and challenged by the trustee are improper under the note and the APA.[38]  The defendant argues that this count should be dismissed as duplicative of Count III, which seeks breach of contract damages as a result of the allegedly improper QAF offsets.  In his response, plaintiff highlights the key differences between Count II and Count III, noting that Count II seeks relief that is broader than Count III, and that the offsets challenged in Count II are subject to the note's escrow and reconciliation provision, while the offsets challenged in Count III are not.[39]  This distinction, plaintiff argues, is important because "it would be illogical for a party to assert a claim for breach of contract when the parties had a prescribed dispute resolution mechanism in the contract."[40]  Plaintiff adds that "it is precisely in this scenario where declaratory judgment is appropriate."[41]

On a motion to dismiss a claim for declaratory judgment as duplicative of other forms of relief sought in the complaint, a court should dismiss the count if the claim for "declaratory judgment will become moot upon disposition of the complaint."[42]  In

---

[33] *In re Reitz*, 134 B.R. 131, 132 (Bankr. D. Del. 1991).

[34] *Bohus,* 784 F.3d at 921 n.1.

[35] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[36] 662 F.3d 212 (3d Cir. 2011).

[37] *Id*. at 221.

[38] D.I. 1 ¶ 143.

[39] D.I. 16 at 12.

[40] *Id*.

[41] *Id*.

[42] *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 674 F. Supp. 2d 562, 566 (D. Del. 2009).

Case 23-50335-CTG    Doc 34    Filed 07/11/23    Page 7 of 9

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 7 of 9

other words, if the claim for declaratory judgment effectively adds nothing to the relief otherwise sought, it should be dismissed. For that to be true, however, there must be "complete identity of factual and legal issues between the" claim for declaratory judgment and some other count in the complaint.[43] If such identity of issues exists, then the claim for declaratory relief should be dismissed as redundant.

Determining whether a claim is redundant prior to trial, however, may at times be a difficult exercise.[44] Courts should therefore dismiss claims for declaratory judgment on a pretrial motion only where "there is no doubt that they will be rendered moot by adjudication of the main action."[45] As this Court explained elsewhere, it is often appropriate to refrain from dismissing claims for declaratory judgment where it is at least possible that the claim may not be redundant and "there seems to be little consequence to allowing the claims to remain in the case until it becomes clear whether they are wholly redundant."[46]

To some extent, both Count II and Count III ask the Court to determine whether certain offsets asserted by the buyer were authorized under the terms of the contracts. Because Count II (which applies to both categories of offsets), however, seeks relief that is broader than Count III (which is limited to the QAF offsets), the entry of a declaratory judgment would grant the plaintiff substantive relief beyond what he would receive if he succeeded on the merits of his breach of contract claim. Because these claims seek different forms of relief, and because it is not clear at this preliminary stage of the litigation whether the adjudication of one will moot the other, the Court will deny the motion to dismiss Count II.

## II. Because the defendant's motion to dismiss Count IV requires the Court to decide an issue that is central to the defendant's motion for judgment on the pleadings, the Court will not dismiss Count IV at this stage.

The implied covenant of good faith and fair dealing "inheres in every contract governed by Delaware law and requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct."[47] Although the covenant may serve to add color to a contract, it cannot "create a free-floating duty unattached to the

---

[43] *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975) (citations omitted).

[44] *See, Principal Life Ins. Co.*, 674 F. Supp. 2d at 566.

[45] *In re PHL Variable Ins. Co. v. Helene Small Ins. Tr.*, 2012 WL 5382905, at *1 (D. Del. Nov. 1, 2012).

[46] *In re Healthcare Real Estate Partners, LLC*, 639 B.R. 294, 302 (Bankr. D. Del. 2022).

[47] *Gower v. Trux, Inc.*, 2022 Del. Ch. LEXIS 41, at *30 (Feb. 23, 2022).

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 8 of 9

underlying legal document."[48] In a contract dispute, courts are therefore cautioned not to rely on the implied covenant where the "contract addresses the conduct at issue, but only when the contract is truly silent concerning the matter at hand."[49] This restraint allows the express terms of the contract to supersede any implied requirement.

Courts may, however, rely on the implied covenant where "a contract lacks specific language governing an issue and the obligation the court is asked to imply advances, and does not contradict, the purposes reflected in the express language of the contract."[50] As one court commented, the "doctrine thus operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer."[51]

In the defendant's view, because the "Complaint, and Plaintiff's Counts I-III establish that the express terms of the contract govern the dispute," there is no need for the Court to apply the implied covenant. Stated differently, there is no "gap to fill" in this case; the question whether the asserted QAF offsets are appropriate is answerable by the express terms of the APA and the note. The language of those provisions either does or does not authorize the setoffs. In either case, however, there is no work left for an implied covenant to do.

In his response, the trustee reiterates his position that both the underlying documents expressly forbid the buyer from asserting any offsets on account of the QAF program.[52] To the extent the Court were to disagree, however, the trustee asserts that he is allowed to argue, in the alternative, that "LADMC's decision to double count the [QAF] liabilities violates the implied covenant of good faith and fair dealing."[53] The buyer's actions, the trustee maintains, are in violation of the parties' negotiations and contradict their intentions to roll up the QAF fees into the purchase price.[54]

---

[48] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotation omitted).

[49] *Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acquisition, Inc.*, 202 A.3d 482, 507 (Del. 2019) (internal quotations omitted).

[50] *Alliance Data Sys. Corp. v. Blackstone Cap. Partners V L.P.*, 963 A.2d 746, 770 (Del. Ch. 2009).

[51] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

[52] D.I. 16 at 17.

[53] *Id.*

[54] D.I. 1 ¶¶ 157-159.

*In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335
July 11, 2023
Page 9 of 9

In order to determine whether Count IV adds anything to the complaint, the Court must decide whether the contracts plainly speak to the issue at hand. That same question, however, is also raised in connection with the defendant's pending motion for judgment on the pleadings. With respect to that motion, the defendant takes the view that (1) the terms of the contracts expressly govern this dispute, and (2) those terms clearly authorize the defendant to assert additional offsets.[55] That motion is set to be fully briefed in the beginning of August.[56]

Because one cannot determine whether Count IV adds anything to the complaint without considering the merits of the parties' positions on the motion for judgment on the pleadings the Court believes the most appropriate path is to defer resolution of the motion to dismiss Count IV pending its consideration of the motion for judgment on the pleadings. The Court will accordingly deny the pending motion without prejudice to defendant's right to renew it in connection with the Court's consideration of the motion for judgment on the pleadings.

## Conclusion

For the reasons explained above, the defendant's motion to dismiss will be denied without prejudice. The Court will issue a separate order to that effect.

Sincerely,

Craig T. Goldblatt
United States Bankruptcy Judge

---

[55] D.I. 26.

[56] D.I. 29.