**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

CRAIG T. GOLDBLATT
JUDGE

824 N. MARKET STREET
WILMINGTON, DELAWARE
(302) 252-3832



May 1, 2024

**VIA CM/ECF**

Re:  *In re Promise Healthcare Group, LLC, et al.*, No. 18-12491; *Michaelson v. L.A. Downtown Medical Center, LLC,* Adv. Proc. No. 23-50335

Dear Counsel:

To begin, the Court wants to apologize to the parties for the fact that these motions have been under advisement for far longer than they ought to have been. The Court appreciates the parties' patience.

* * *

During their bankruptcy cases, the debtors sold a facility to L.A. Downtown Medical Center under § 363 of the Bankruptcy Code.[1] The terms of the transaction provided that a portion of the purchase price would be paid over time, with those future payment obligations reflected in a note. The asset purchase agreement created

---

[1] *See* D.I. 1 ¶ 44. Promise Healthcare Group, LLC and its affiliated debtors are referred to as the "debtors," or the "seller." Defendant L.A. Downtown Medical Center is herein referred to as "buyer" or "defendant."

Case 23-50335-CTG   Doc 60   Filed 05/01/24   Page 2 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 2

a mechanism that permitted the buyer to set off, against those future payment obligations, certain liabilities for which the seller retained responsibility.

In September 2020, the Court entered an order confirming the debtors' liquidating plan. The trustee appointed to administer the liquidating trust succeeded to the rights of the debtors and is the plaintiff in this adversary proceeding.[2] The buyer has withheld certain amounts that the seller contends are due and owing under the parties' agreement. The seller has thus filed this lawsuit asserting a breach of the asset purchase agreement.[3] To that end, the complaint asserts four counts: Count I seeks a declaration that the buyer is in default, Count II asks for declaratory judgment that the buyer has improperly set off certain amounts from the payments it has made under the note, Count III is for breach of contract as it relates to how the parties allocated responsibility for certain payables due to, and receivables due from, the State of California. Count IV alleges a breach of the implied covenant of good faith.[4] In a letter ruling dated September 5, 2023, the Court denied, without prejudice, the buyer's motion to dismiss Counts II & IV. The buyer now moves for judgment on the pleadings on Counts I & III. The seller similarly seeks judgment on the pleadings on Count I.

---

[2] *In re Promise Healthcare Grp., LLC,* No. 18-12491 (Bankr. D. Del.), D.I. 2072. Citations to materials filed on the docket in these bankruptcy cases are cited as "Main Case D.I. ___."

[3] The asset purchase agreement is referred to as the "APA."

[4] *See,* D.I. 1.

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 3 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 3

For the reasons described below, both motions for judgment on the pleadings with respect to Count I will be denied on the ground that the claim is moot. The note matured in accordance with its terms on September 4, 2023. And under the terms of the Note, the only material consequence of a default is an acceleration of the note. Accordingly, whether the buyer had previously defaulted on the note turns out to make no difference to the parties' substantive rights.

The complaint and the motions describe in substantial detail the APA's mechanic under which the buyer may affect a setoff. This includes an elaborate procedure under which the seller may contest a setoff that the buyer intends to take. When such a setoff is contested, the buyer is required to contribute the disputed amount into escrow. Both parties argue that the other party has failed to comply with these procedures. But as far as the motions now before the Court go, these disputes bear only on the request in Count I that the Court declare that the buyer has defaulted under the note. Because that request for relief is now moot, the Court will address the substance of these assertions in only general terms.

The buyer's motion with respect to Count III relates to an amendment to the APA (the Second Amendment). That amendment changed the allocation of responsibility for amounts owed to, and the right to receive payables from, the State of California. The question is whether the change made at the time of the Second Amendment applied only to amounts billed and paid as of the closing of the transaction, or also covered amounts that would be billed and paid thereafter. The language of the agreements makes clear that the Second Amendment addressed only

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 4 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 4

the provisions of the original APA that applied to the amounts billed and paid *prior to* the closing. The terms of the original APA regarding amounts that are billed or paid *after* the closing remain in effect. The buyer is thus entitled to judgment on the pleadings on that issue.

The Court appreciates that this resolution of the pending motions leaves others matters in the litigation unresolved. The Court will accordingly set a status conference in order to discuss with counsel appropriate procedures for the Court to consider the remaining disputes between the parties.

## Factual and Procedural Background

The debtors operated short- and long-term medical care facilities.[5] Before they filed for bankruptcy, the debtors negotiated an asset purchase agreement for a sale of the Silver Lake Medical Center to LADMC.[6] The debtors filed a chapter 11 petition on November 5, 2018. The next day, the debtors moved the Court to approve bid procedures under which LADMC would serve as the stalking-horse bidder for the facility.[7]

---

[5] On these cross motions for judgment on the pleadings under Civil Rule 12(c), the Court views "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving part." *Wolfington v. Reconstructive Orthopedic Associates II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (internal citation omitted). The Court "may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Id.* (internal citation omitted). Accordingly, the Court "may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Id.* (internal citations omitted).

[6] D.I. 1-2 at 1 (dated October 24, 2018).

[7] D.I. 1 ¶ 23 (admitted in answer).

Case 23-50335-CTG   Doc 60   Filed 05/01/24   Page 5 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 5

1. *The operative documents: The APA, the Second Amendment and the Note.* The stalking horse asset purchase agreement provided that the purchase price for the sale of the facility would be $84.15 million, subject to certain adjustments.[8] The agreement further contemplated that $76.05 million of that price would be paid at closing, with the remaining amount ($8.1 million) to follow in deferred payments.[9] The parties subsequently memorialized these deferred obligations in a note providing for nine semi-annual payments of $900,000, plus applicable interest.[10]

In December 2018, the Court entered the bid procedures order.[11] The debtors did not receive other qualified bids. The debtors, therefore, as provided in the bid procedures order, cancelled the auction and sought authority to sell the facility to LADMC under the terms of the stalking horse asset purchase agreement.[12]

The State of California, however, had objected to the sale on the ground that it purported to sell the facility free and clear of liabilities that had not yet been assessed under the state's Hospital Quality Assurance Fee program.[13] The parties negotiated extensively to resolve California's objections.[14] The Court ultimately approved the

---

[8] D.I. 1-2 § 3.1.

[9] *Id.* § 3.3(d), 3.4.

[10] D.I. 1-4.

[11] D.I. 1 ¶ 24 (admitted in answer).

[12] D.I. 1 ¶ 25 (admitted in answer).

[13] *See* Main Case D.I. 489.

[14] D.I. 1 ¶¶ 35-42; D.I. 37 ¶ 36 (buyers "[a]dmitted that the Parties engaged in negotiations, including how to address the QAF liabilities that the State of California had not yet assessed against" the Silver Lake Medical Center.)

transaction by order dated February 13, 2019.[15] The complaint alleges, and the answer acknowledges, that the parties entered into the Second Amendment to the APA on the same day that the Court approved the sale.[16] As will be further described below, the parties now dispute the effect of the Second Amendment on their respective rights and obligations related to the Hospital Quality Assurance Fee program.[17]

        2. *The setoff mechanism.* Under the APA, the seller remained responsible for certain liabilities that might be charged to the buyer after the closing (the "excluded liabilities"). In substance, the APA permits the buyer to deduct, from its payment obligations under the note, any excluded liabilities that it paid.[18] (In addition, the APA's mechanic for truing up amounts due related to the QAF Program, which is discussed in further detail below, was through the same setoff mechanism.) Much of the complaint is focused on disputes between the parties relating to these setoffs.[19] The seller challenges both the buyer's entitlement to make certain deductions on the merits as well as the buyer's compliance with the APA's specified procedures for effecting such setoff.

---

[15] Main Case D.I. 740.

[16] D.I. 1-3 (referred to as "Second Amendment"). D.I. 1 ¶ 42, 44; D.I. 37 ¶ 42, 44.

[17] The Hospital Quality Assurance Fee Program is referred to as the "QAF Program."

[18] D.I. 1-2 §3.4

[19] D.I. 1 ¶¶ 49-99.

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 7

The note describes a process of claiming and objecting to these offsets. In substance, if the buyer intends to affect a setoff, it is required to give notice to the seller of its intent.[20] If the seller disputes that claim of setoff, it must advise the buyer of the dispute. Upon receiving such a notice, the buyer then has 30 days to place the disputed funds into escrow, where they remain until the dispute is resolved. Amounts that the buyer indicated it would set off that were not contested by the seller could be offset and are considered a payment under the note.[21]

3. *The QAF Obligations.* Under the QAF Program, the California Department of Health Service collects fees from all hospitals. Those fees are then distributed to hospitals based on the services those hospitals provided to patients who are uninsured, or are covered by Medi-Cal, the state's program that provides medical insurance to low-income residents.[22] The calculation of *both* the amounts that hospitals owe to the Department, *and* the amount they are entitled to receive from the Department, are based on the services the hospital provided within a relevant time period. Importantly, those calculations were at times made years after the relevant time period, which meant that hospitals would receive, from the Department, both payments and bills that relate to services the hospital had provided as much as several years earlier.[23]

---

[20] D.I. 1-4 § 3(b).

[21] *Id.*

[22] D.I. 1-2 Annex 1.1 at 14; *In re Promise Healthcare Group, LLC*, No. 23-50335, 2023 WL 4476134 (Bankr. D. Del. July 11, 2023) at *7.

[23] D.I. 1 ¶ 27; D.I. 37 ¶ 27 (admitted).

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 8

Under the APA, the basic understanding was that the seller would retain responsibility for fees related to services provided before the closing, while responsibility for fees that relate to services provided after the transaction closed would be borne by the buyer.

   A. *Treatment of the QAFs under the original APA.* The original APA sought to memorialize this understanding through a series of different provisions. *First*, the APA addressed how the seller would be compensated for QAF payments (and charged for QAF obligations) with respect to cash that came in, and bills received, in the period between the time the agreement was negotiated (in September 2018) and the date on which the transaction closed (in March 2019). The mechanic reflected in the agreement was that the buyer was required to make a good faith estimate of what it expected these amounts to be at the time of the closing.[24] The amount the buyer paid at closing reflected that estimate.[25]

Thereafter, the buyer had 120 days to determine this amount with greater precision. The APA provides that once that is finally determined, the adjustment (whether it turns out to increase or decrease the amount owed to the seller) would be captured by increasing or decreasing the amount paid at the time of the semi-annual payments due under the note (including by setting off the amount from the note

---

[24] D.I. 1-2, Annex 1.1 p. 6-7.
[25] *See* D.I. 1-2 §§ 3.1, 3.7, 3.9.

Case 23-50335-CTG   Doc 60   Filed 05/01/24   Page 9 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 9

obligation, if the amount was a net credit to the buyer). These obligations are reflected in § 3.7 of the original APA.[26]

*Second*, the APA contained a separate set of provisions that addressed payments and bills received *after* the closing. These amounts were also addressed by making adjustments to the semi-annual payments due under the note (again, including by means of a setoff if the adjustment was a net credit to the buyer). These obligations are reflected in § 13.4 of the APA.[27]

### B. *Changes to the QAF Adjustments under the Second Amendment.*

The Second Amendment made two specific changes to the original APA related to the QAF Program. *First*, the parties eliminated the process by which the buyer made a good faith estimate of the QAF obligations and receipts in the period from the time the transaction was negotiated through closing. That process was replaced, in the Second Amendment, by a specific amount that had been agreed by the parties. This change is implemented by § 3 of the Second Amendment.[28]

*Second*, the parties replaced certain provisions of § 3.7 that relate to truing up these estimates to the actual QAF payments and obligations for this period after the passage of 120 days. The original agreement provided that these amounts would be trued up by adding or subtracting to the amounts paid in the semi-annual payments under the note. These provisions were revised so that, if the buyer were in a net

---

[26] D.I. 1.2 § 3.7.

[27] D.I. 1.2 § 13.4; D.I. 1-4 § 3(a)(iii).

[28] D.I. 1-3 § 3.

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 10 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 10

payable position, it would be obligated to pay that amount in two equal payments to be made in August 2019 and February 2020. If, however, the buyer turned out to be in a net receivable position, the buyer could set off those amounts from its obligations under the note. These changes are implemented by §§ 4 and 5 of the Second Amendment.[29]

    4. *The parties' performance under the agreements.* Much of the complaint and briefing now before the Court is dedicated to addressing a series of disputes that have arisen between the parties regarding compliance with the APA's procedures for claiming and disputing the right to set off amounts otherwise due under the note as they relate to excluded liabilities. As further described below, however, these factual details turn out not to affect either party's entitlement to the relief sought in the cross motions for partial judgment on the pleadings. Rather, the only fact that turns out to be material to these disputes is that the note matured on September 5, 2023, when the final payment thereunder became due. This Court heard argument on the cross motions for judgment on the pleadings on October 26, 2023.[30]

## Jurisdiction

    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) as a matter "arising in" Title 11.[31] As a case within the district court's bankruptcy

---

[29] D.I. 1-3 §§ 4-5.

[30] *See* D.I. 58.

[31] This Court previously expressed concern over its jurisdiction to hear this case under § 1334(b)'s grant of "related to jurisdiction." However, as the Court noted in its prior letter

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 11 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 11

jurisdiction, it has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order of reference.[32]  Because this Court has jurisdiction to enforce its own orders, this is a core matter under § 157(b).[33]

## Analysis

Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), as made applicable to this adversary proceeding under Federal Rule of Bankruptcy Procedure 7012.  Such a motion is appropriate where "there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law."[34]  When determining whether certain material facts are disputed, courts should consider the effect of any denials in the defendant's answer to the complaint.  That is, the allegations within the answer are assumed true when the answer either admits or does not deny them.[35]  The facts that are truly undisputed, however, must be viewed in the light most favorable to the nonmoving party.[36]  Finally, courts must generally confine their analysis to the pleadings, i.e., the complaint and the answer, although courts may also consider written instruments attached to the pleadings.[37]

---

ruling, the relief sought by the parties is sufficiently related to the enforcement of the APA that any violations of the APA constitute a violation of this Court's order approving the APA.

[32] Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated Feb. 29, 2012.

[33] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

[34] *Sikirica v. Nationwide Ins. Co*, 416 F.3d 214 (3d Cir. 2005).

[35] *See United Food & Comm. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022) (citing 61A Am. Jur. 2d § 497).

[36] *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 47 F.4th 225, 228 (3d Cir. 2022).

[37] Fed. R. Civ. P. 10(c).

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 12 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 12

### I. The motions for judgment on the pleadings with respect to Count I will be denied; Count I will be dismissed as moot.

Seller contends that the buyer's failure to place certain amounts in escrow in March 2022 and September 2022 amounted to events of default under the terms of the note. Seller further contends that the buyer's failure to make the September 2022 payment on the note also amounted to an event of default. In Count I of the complaint, seller seeks a declaration to that effect. The seller's motion for judgment on the pleadings seeks the entry of judgment on this count.

In response, the buyer argues that the notices seller sent failed to comply with the objection procedures set out in the APA. And buyer contends it subsequently cured its failure to make the payment required in September 2022. Buyer thus cross moves for judgment on the pleadings on this count.

By the time the Court heard argument on the motions, however, the note had matured. And the terms of the note make plain that the only material consequence of a default is that it causes the remaining amounts due under the note to accelerate.[38] But while acceleration of the remaining amounts due under the note might have made a difference before the note matured in September 2023, that set of issues has now been overtaken. There is no longer any dispute that all amounts due

---

[38] *See* D.I. 1-4 § 5 ("Upon the occurrence and during the continuance of any Event of Default … [seller] may … declare, by notice to [buyer], all amounts payable hereunder to be and become immediately due and payable, whereupon such amounts shall be immediately due and payable in full.")

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 13

and owing under the note are now in fact due. The only question is to determine what is in fact owed.

For that reason, granting the seller a declaration that the buyer had defaulted under the note would not entitle the seller to any concrete relief to which the seller is not already entitled. The law is clear that a claim is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[39] The touchstone of the mootness doctrine is the "court's ability to grant effective relief."[40] Accordingly, "if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome," the claim is moot.[41] That is precisely the case here. The Court will thus deny the cross motions for judgment on the pleadings on Count I and will dismiss that count as moot.

## II. The Court grants the buyer's motion for judgment on the pleadings on Count III.

The dispute between the parties related to Count III turns on the question whether the Second Amendment to the APA addresses all QAF offsets or only those arising out of payments and bills received prior to the time of the closing. The bills received after the closing, but that relate to procedures performed before the closing, exceed the payments that relate to the same period. As a result, the buyer would be entitled to a net payment from the seller on account of this period if that right were

---

[39] *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003) (internal quotations and citations omitted).

[40] *Id.* (citation omitted).

[41] *Id.* (citations and internal quotations omitted).

Case 23-50335-CTG  Doc 60  Filed 05/01/24  Page 14 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 14

not eliminated in the Second Amendment. The buyer contends that the Second Amendment did not eliminate that right, and thus set off the amount to which it claims to be entitled from its payments under the note. The seller contends that the buyer is not entitled to this setoff on account of the Second Amendment. Count III seeks damages on account of this setoff, which the seller argues was improperly taken. The buyer now seeks judgment on the pleadings with respect to this count.

Because the plain text of the agreement makes clear that the Second Amendment changed the parties' rights and obligations only with respect to amounts paid and bills received before the closing, the buyer is entitled to motion for judgment on the pleadings on Count III.

As explained above, the basic economics of the transaction were that the seller retained responsibility for QAF bills related to procedures that occurred before the transaction closed and was entitled to QAF payments related to those same procedures. As originally drafted, the agreement provided that the buyer would estimate, in advance of closing, what these amounts would be for payments and bills received before the closing, with a true up to occur within 120 days. The Second Amendment to the APA scrapped the buyer's obligation to estimate the amount, replacing it with a fixed sum.[42]

The dispute between the parties is whether, when the parties made this change, they also eliminated the buyer's right to reduce its note obligation to the

---

[42] D.I. 1-2 § 3.7, Annex 1-1 p. 9; D.I. 1-3 § 3.

seller for net liabilities it incurred to the State of California related to bills and payments received *after* the closing that were for procedures performed before the closing. (Because that is a mouthful, the net obligation for bills and payments received after the closing, but that relate to procedures that occurred before the closing, will be referred to as the "disputed QAF responsibilities".) Otherwise put, the question is whether the Second Amendment may be fairly read to change the APA so that the buyer was required to retain (rather than set off against the note) the disputed QAF responsibilities.

If the contracts are ambiguous in any way, meaning that the provisions in controversy are "reasonably or fairly susceptible of different interpretations or may have two or more different meanings," the Court must deny the motion.[43] The seller insists that the substance of the agreement that was struck at the time California's objections were resolved, the parties entered into the Second Amendment, and the Court approved the sale was that the buyer would take on the disputed QAF responsibilities. The seller contends that extrinsic evidence will support its construction and argues that the Court should deny the motion and provide it the opportunity to provide such evidence. But that kind of evidence may properly be considered only if the language of the agreement is ambiguous.[44] Where the contract

---

[43] *Lillis v. AT&T Corp.*, 904 A.2d 325, 330 (Del Ch. 2006) (quoting *Rhone-Poulenc Basic Chems. v. Am. Motorists Ins.*, 616 A.2d 1192, 1196 (Del. 1992).

[44] *GMG Cap. Invs. v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 783 (Del. 2012).

itself is unambiguous, the Court's obligation is simply to enforce it according to its terms.[45]

The seller argues that the specific amounts set forth in the Second Amendment were intended to provide that the buyer would be "fully credited" for its right to recover on the disputed QAF responsibilities. The text of the relevant provision of the APA provides:

> If, after the Effective Time, Buyer or the Hospitals… receive a bill or invoice from the State of California on account of the QAF4 Program, then the amount shown as due to the State of California on account of the QAF4 program will be deducted (i) first from [amounts received from the State on account of the QAF program] and (ii) next, from each of the next Deferred Payments (including amounts added to Deferred Payments under this Section 13.4) *until fully credited to the Buyer*.[46]

The seller's argument is that the fixed amount set forth in the Second Amendment operated to ensure that the buyer was "fully credited" for the disputed QAF obligations, such that the buyer was no longer entitled to set off those amounts from the "Deferred Payments" (meaning, the note).

There is nothing, however, in the Second Amendment that supports such a conclusion. The provision of the original APA that authorizes the seller to set off the disputed QAF responsibilities is § 13.4(d). And importantly, nothing in the Second Amendment alters that section in any way.

The only provisions of the Second Amendment that relate to the QAF program are §§ 3-5. As described above, § 3 operated to replace the buyer's good faith estimate

---

[45] *Lillis*, 904 A.2d at 329.

[46] D.I. 1-2 § 13.4(d).

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 17 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 17

of *pre-closing* bills and payments with fixed amounts. Nothing in the language purports to address the disputed QAF responsibilities, which are for bills and payments received *after* the closing.

Sections 4 and 5 of the Second Amendment relate to the same set of bills and payments. The original APA trued up the actual amounts owed to the seller by increasing the principal of the note. These paragraphs replace that obligation with a separate obligation to pay the seller in two payments of equal amounts in August 2019 and February 2020. Again, however, nothing in this language suggests that these changes have any application to bills and payments received *after* the closing.

The seller offers a series of complex arguments in an effort to suggest that the agreement is at least amenable to a construction under which the Second Amendment eliminated the buyer's right to set off the disputed QAF responsibilities.[47] None of those arguments succeed in rendering the agreement ambiguous. There is no dispute that (a) the provision of the original APA that entitled the buyer to set off the disputed QAF responsibilities was § 13.4 and (b) the text of Second Amendment did not purport to delete or amend that section. The Court accordingly concludes that the agreement is unambiguous, such that the seller may not offer extrinsic evidence to suggest that the agreement in fact has some different meaning. The buyer is entitled to judgment on the pleadings on Count III.

---

[47] *See* D.I. 36 at 14-19.

Case 23-50335-CTG    Doc 60    Filed 05/01/24    Page 18 of 18

*Michaelson v. L.A. Downtown Med. Ctr.*, Adv. Proc. No. 23-50335
May 1, 2024
Page 18

**Conclusion**

For the foregoing reasons, the Court (a) will deny both parties' motions for judgment on the pleadings on Count I and will dismiss that count as moot and (b) will grant the buyer's motion for judgment on the pleadings on Count III. A separate order will issue. In addition, chambers will reach out to the parties in order to set a status conference to discuss the most appropriate means of advancing the remaining issues in this adversary proceeding towards resolution.

    Sincerely,

    Craig T. Goldblatt
    United States Bankruptcy Judge